## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **JOHN D. BROWN, # B-34351,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 14-cv-1122-NJR** |
| | ) | |
| **WEXFORD HEALTH SOURCES,** | ) | |
| **DEBBIE MAGNUS,** | ) | |
| **MS. KIM, S.A. GODINEZ,** | ) | |
| **VICTOR A. DOZIER,** | ) | |
| **ASST. WARDEN CAMERON,** | ) | |
| **MAJOR BANAL,** | ) | |
| **MAJOR PRUETT,** | ) | |
| **ALAN GEPHART,** | ) | |
| **SHAWN D. RITCHEY,** | ) | |
| **TEANAH HARTER,** | ) | |
| **and HENRY P. TEVERBAUGH,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM AND ORDER</u>

**ROSENSTENGEL, District Judge:**

Plaintiff is a prisoner at Taylorville Correctional Center ("Taylorville"), serving a seven-year sentence for burglary.  He brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, raising numerous claims relating to his previous incarceration at Vandalia Correctional Center ("Vandalia").

Plaintiff filed an earlier lawsuit against several Vandalia officials in July 2013, *Brown v. Gephart*, Case No. 13-cv-659-JPG-PMF.[1]   In that case, Plaintiff's retaliation and equal protection claims are still pending against the same Defendant Gephart named in this case.  All

---

[1] Case No. 13-cv-659-JPG-PMF was filed in this Court on July 11, 2013, after it was transferred here from the Northern District of Illinois, where it had been erroneously filed on June 7, 2013.  After the merits review was completed by Judge J. Phil Gilbert, service was ordered on Defendant Gephart on August 5, 2013.

other claims in that case against all other named defendants were dismissed upon threshold review, with the exception of a claim against unknown mailroom staff.  That unrelated claim was severed into a separate case, which Plaintiff then voluntarily dismissed (Case No. 13-cv-795-JPG).

**The Complaint**

The 41-page complaint (Docs. 1, 1-1) names 12 defendants, and outlines 21 counts. Counts 1-9 allege that various defendants have retaliated against Plaintiff because he filed grievances and the previous lawsuit mentioned above.  Counts 10-12 claim that Defendants Kim, Magnus, Dozier, and Cameron were deliberately indifferent to Plaintiff's medical needs on July 3, 2013, when Plaintiff was denied medical treatment because he would not sign a money voucher form to be charged a co-payment for the medical visit.  Count 13 asserts state law claims of medical malpractice and negligence based on the July 3, 2013, incident (Doc. 1-1, pp. 4-8). Count 14 asserts Eighth and Fourteenth Amendment claims against Defendant Godinez (Doc. 1-1, pp. 8-11).  Count 15 is against Defendant Wexford Health Sources ("Wexford") for Eighth and Fourteenth Amendment violations (Doc. 1-1, pp. 11-12).  Counts 16-18 assert equal protection and discrimination claims against Defendants Wexford, Kim, Magnus, Dozier, and Godinez (Doc. 1-1, pp. 12-16).

Count 19 is against Defendants Teverbaugh and Ritchey for violating Plaintiff's rights to due process in a disciplinary hearing on January 27, 2014 (Doc. 1-1, pp. 16-17).  Count 20 asserts state law claims against Defendants Teverbaugh, Ritchey, and Godinez over the same incident, as well as other alleged violations (Doc. 1-1, pp. 17-18).  Finally, Count 21 claims that all defendants have intentionally inflicted emotional distress upon Plaintiff (Doc. 1-1, pp. 18-19).

The following summary of Plaintiff's factual allegations is presented roughly in

chronological order.  Plaintiff alleges generally that after he filed his earlier lawsuit, Defendants Gephart, Dozier, and others intensified their retaliation and harassment against him.  The acts of retaliation included the issuance of false disciplinary reports, verbal harassment, confiscation of Plaintiff's legal documents, destruction of his property, denial of his due process rights during disciplinary hearings, and the intentional opening of his legal mail (Doc. 1, pp. 13-14).

In reference to his medical needs, Plaintiff states that on June 30 and July 2, 2013, he submitted written requests for treatment for a possible ear infection, stating he had severe pain and hearing loss (Doc. 1, pp. 8-9).  On July 3, 2013, he was called to the Health Care Unit, where Defendant Kim (a nurse) told him that in order to be treated, he must sign a money voucher for the $5.00 co-payment.  Plaintiff responded that he was exempt from the $5.00 co-payment requirement because he had a need for emergency care and because he was indigent (having less than $20.00 in his inmate trust account), and he should not be forced to sign a money voucher to allow the co-payment to be deducted from his account in the future.  Plaintiff tried to show Defendant Kim documentation of his indigent status and of the prison policies and state statute regarding the exemptions he invoked, but she refused to consider the documents.  Defendant Kim refused to treat Plaintiff unless he signed the voucher.

Plaintiff continued to wait in the Health Care Unit for about 45 minutes.  Defendants Dozier (Vandalia Warden) and Magnus (Healthcare Administrator) then arrived.  Plaintiff explained to them and to Defendant Kim that he needed treatment but had no funds to pay and that he should be exempt from paying a fee.  They refused to consider Plaintiff's argument or documents and told him to "pay the money or get out" (Doc. 1, p. 11).  Plaintiff declined to sign the voucher, and he was escorted back to his cell without treatment.  Plaintiff notes that prior to this incident, he had filed no fewer than twenty grievances regarding constitutional deprivations

and misconduct by Vandalia officials, including Defendants Dozier and Magnus (Doc. 1, p. 11).

Later in the day, Plaintiff told Defendant Cameron (Assistant Warden) about the incident described above and explained that he was still in pain and needed treatment.  She investigated the matter but refused to take any further action on Plaintiff's behalf.

Plaintiff continued to "suffer excruciating pain" for several days.  He filed a grievance on July 4, 2013, over the refusal to treat him unless he agreed to be charged the co-payment, and he included in the grievance another request to be given treatment for his pain (Doc. 1, p. 12).  The grievance was not promptly answered or properly investigated and was ultimately denied with the approval of Defendant Godinez (Director of the Illinois Department of Corrections – "IDOC").

Regarding Plaintiff's claims of retaliation, he initially describes a January 31, 2012, incident which generated his earlier lawsuit against Defendant Gephart (Case No. 13-cv-659-JPG-PMF) (Doc. 1, pp. 7-8).  He then claims that Defendant Gephart continued to harass and retaliate against him from April 2012 through March 2014, and this pattern intensified after he filed the earlier suit on July 11, 2013.  Further retaliation ensued after Plaintiff filed his grievance over the July 3, 2013, denial of medical care (Doc. 1, p. 13).

Noting that Judge J. Phil Gilbert allowed him to proceed on his retaliation claim against Defendant Gephart for events that took place from April 2012 through March 2013, Plaintiff states that he wishes to "incorporate by reference" a large portion of his complaint in Case No. 13-cv-659-JPG-PMF, as part of the instant complaint (Doc. 1, p. 17).  He then alleges generally that he has been subjected to a "campaign of ongoing harassment, punishment, and retaliation" at the hands of many Vandalia officials, including Defendants Dozier, Magnus, Pruett, Gephart, Teverbaugh, Ritchie, and Harter, which he labels as "Count 1" of the complaint.  *Id*.  He lists

numerous wrongs, such as denial of access to the law library, a "steady stream of false disciplinary reports," and denial of medical treatment, without specifying any distinct incidents or linking the misconduct to a particular defendant.  (Doc. 1, p. 17; *see also* Doc. 1, pp. 13-14). His outline of the facts mentions "numerous instances" where unnamed staff opened his clearly marked legal mail (Doc. 1, p. 14).  Other unnamed staff issued him false disciplinary reports on March 21, 2013, for unauthorized movement, and on September 27, 2013, for a charge related to confiscation of Plaintiff's legal documents.  *Id.*

Plaintiff gives more detail regarding a January 18, 2014, incident when Officer Brookins (who is not a defendant) took all of Plaintiff's property out of his living area for a shakedown while Plaintiff was at dinner.  At the time, Plaintiff was housed at the Vandalia "Work Camp" and was attending academic/educational classes five days a week (Doc. 1, pp. 14-15).  Two hours later, Plaintiff received his property back but was not given a shakedown receipt, nor was he issued a disciplinary report.  One hour after getting his property back, Plaintiff was told that he was being moved from the work camp back to general population for disciplinary reasons, but he was given no further information.

On January 24, 2014, Plaintiff was called to an adjustment committee hearing before Defendants Teverbaugh and Ritchey (Doc. 1, pp. 15-16).  They asked him what happened, and Plaintiff responded that he had no idea because he had never been given any disciplinary report. Defendant Teverbaugh read the report to Plaintiff, but Plaintiff refused to waive his right to 24-hour notice, stating he intended to present a defense.  Defendant Teverbaugh gave Plaintiff the disciplinary report and rescheduled the hearing for the following Monday (January 27, 2014). When Monday came, Plaintiff was not called to a hearing.  He later learned that he had been found guilty of the charges by Defendants Teverbaugh and Ritchey.  Plaintiff's grievance over

the disciplinary action was denied by Defendant Harter (grievance officer).

Plaintiff claims that Defendant Banal "authorized and approved" the false disciplinary charges against Plaintiff arising from the shakedown of his property, and approved his punishment, which included his removal from the work camp and expulsion from his educational programs (Doc. 1-1, p. 1).  Defendant Banal took this action in retaliation for Plaintiff's prior grievance activity and lawsuit against other Vandalia officials.[2]  Likewise, Defendants Teverbaugh and Richey deliberately refused to follow due process procedures in the January 2014 adjustment committee hearing as well as an earlier (September 27, 2013) hearing, in retaliation for Plaintiff's grievances and lawsuit (Doc. 1-1, p. 2).[3]

Plaintiff also outlines several specific instances of retaliation by Defendant Gephart, which occurred in February 2014 (Doc. 1-1, p. 3).[4]  On February 10 and 11, he searched Plaintiff's property for no reason, pulled Plaintiff out of line, and took his property in retaliation for Plaintiff's grievances and earlier lawsuit against him.  On February 12 and 13, he threatened to put Plaintiff in segregation, made derogatory comments, and threatened him with physical harm.  On February 27, Defendant Gephart pulled Plaintiff out of line and ordered another officer to take Plaintiff's identification card.  An hour later, the card was returned to Plaintiff defaced and destroyed, so that Plaintiff had to pay for a replacement card.

Plaintiff seeks declaratory and injunctive relief, as well as damages (Doc. 1-1, pp. 19-21).

## Merits Review Pursuant to 28 U.S.C. § 1915A

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

---

[2] Plaintiff labels this retaliation claim as "Count 5" in his complaint (Doc. 1-1, p. 1).
[3] This retaliation claim is labeled as "Count 6" (Doc. 1-1, pp. 1-2).
[4] Plaintiff labels this retaliation claim as "Count 7" of the complaint.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Because of the unwieldy nature of the complaint, rather than attempting to consolidate and reorganize Plaintiff's claims in chronological order, the Court shall analyze Counts 1-21 as pled by Plaintiff.

**Count 1 – "Campaign of Ongoing Harassment, Punishment, and Retaliation"**

Plaintiff attempts to incorporate by reference as part of this count a large portion of his complaint in *Brown v. Gephart*, Case No. 13-cv-659-JPG-PMF, describing events that occurred from April 2012 through March 2013 (Doc. 1, p. 17). This he cannot do. The Court will not

permit piecemeal pleadings; all of the allegations of a complaint are to be presented in a single document.  *See* FED. R. CIV. P. 8(a).  Furthermore, Plaintiff's claims that survived threshold review in Case No. 13-659 are proceeding in that matter.  It is unnecessary and duplicative to incorporate them into a new case.  That being said, the undersigned Judge has taken notice that Plaintiff stated claims against Defendant Gephart that survived threshold review in Case No. 13-659.

The allegation that harassment and retaliation by Vandalia officials against Plaintiff continued through March 2014 may be cognizable in this action.  In Count 1, however, Plaintiff fails to connect any of the claims of retaliation – the "steady stream of false disciplinary reports; improper and malicious confiscation of property, inadequate disciplinary hearings; intentional mishandling of legal mail; unjust liberty restrictions in segregation; interference with, and denial of [his] right to receive medical treatment" – to a particular defendant (Doc. 1, p. 17).  He lists Defendants Dozier, Magnus, Pruett, Gephart, Teverbaugh, Ritchey, and Harter in this count, however, the complaint does not give sufficient factual information about any specific incidents of retaliation to enable any defendant to answer the claims collected into Count 1.  *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).  Accordingly, **Count 1** shall be dismissed without prejudice.

## Count 2 – Retaliation by Defendant Harter (Grievance Officer)

In this count, Plaintiff alleges that Defendant Harter retaliated against him by improperly denying and refusing to adequately investigate his numerous grievances (Doc. 1, p. 18).  He argues that she thus allowed the unjust punishment and retaliation inflicted by others to stand uncorrected, intentionally failing to remedy the wrongs done to Plaintiff after she was informed of them through his grievances.

This claim is virtually identical to the claim Plaintiff raised in Case No. 13-cv-659, designated therein as Count 7, against Defendant Harter and several other defendants (including Defendants Magnus, Dozier, and Godinez), for denying his grievances.  Count 7 was dismissed with prejudice in that case.  The only difference is that Plaintiff now has labeled his claim as "retaliation," which he states was triggered by his action of filing other grievances approximately two years ago, as well as by his 2013 lawsuit.

It is true that prison officials may not retaliate against inmates for filing grievances.  *See, e.g., Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000).   In order to prevail on a retaliation claim, however, the inmate must have experienced an adverse action that would likely deter similar protected activity in the future.  *Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009).   Clearly, Defendant Harter's "retaliatory" inaction on Plaintiff's grievances has not deterred him from bringing further grievances and complaints.  As the Seventh Circuit has noted, "[E]ven in the field of constitutional torts *de minimis non curat lex*.  Section 1983 is a tort statute.  A tort to be actionable requires injury.  It would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise[.]"  *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982).  Plaintiff's claim is for just such a *de minimis* injury.  Further, it is indistinguishable from the frequently-raised (and as-frequently dismissed) claim that inmates' grievances are lost, ignored, not investigated, or denied within many prisons in this state, unconnected to any retaliatory motive.

Inmates have no constitutional right or other guarantee to have their grievances investigated to their satisfaction or even to obtain a response to their grievances (let alone a

favorable one).  The purpose of the prison grievance system is to provide an opportunity for the informal resolution of problems and minimize the need for litigation.  A flaw in the grievance procedure or its execution will not be recognized as the basis for a civil rights suit, even if it is labeled as "retaliation."  A prison official's failure to follow the institution's grievance procedure or to sustain a grievance simply does not give rise to a constitutional claim.  *See Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Maust v. Headley*, 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982).  **Count 2** shall be dismissed with prejudice for failure to state a claim upon which relief may be granted (and as duplicative of the dismissed Count 7 in Case No. 13-cv-659-JPG-PMF).

### Count 3 – Retaliation by Defendant Dozier (Warden)

The majority of this claim is identical to Count 2 above and to Count 7 in Case No. 13-cv-659-JPG-PMF.  Plaintiff alleges that Defendant Dozier, in retaliation for Plaintiff's having filed grievances two years ago and bringing suit in Case No. 13-659, denied and refused to investigate his numerous subsequent grievances and failed to take the corrective action requested in those grievances against other officials whom he supervised (Doc. 1, pp. 18-20).  These allegations fail to state a constitutional claim, for the reasons discussed above in Count 2.  Furthermore, as discussed in the order dismissing Count 7 in Case No. 13-659, Defendant Dozier cannot be held liable because of his role as a supervisor over other defendants.  *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001).

Only one statement describes direct involvement by Defendant Dozier in an alleged act of retaliation:  Plaintiff's claim that on July 3, 2013, Defendant Dozier interfered with his ability to receive adequate medical treatment for his ear pain (Doc. 1, p. 19, ¶ 78).  This claim is based on the identical facts which form the basis of Count 11 for deliberate indifference to medical

needs.  The merits of Count 11 shall be analyzed below.

Taking the pleading as a whole, it is apparent that Plaintiff is claiming that virtually all the acts or omissions by each defendant were taken in retaliation for his grievance activity that began in 2012 and for his 2013 lawsuit (which was not even filed in the proper court until after this July 3 incident, and which was allowed to proceed only against Defendant Gephart more than a month later).  Plaintiff admits that he was denied medical care when he refused to sign a form to authorize deduction of the $5.00 co-payment from his account.  In light of this fact, his theory that retaliation was the true motive for Defendant Dozier's "interference" with his medical treatment fails to cross "the line between possibility and plausibility."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007).  **Count 3** against Defendant Dozier for retaliation shall also be dismissed with prejudice for failure to state a claim upon which relief may be granted.

## Count 4 – Retaliation by Defendant Magnus (Health Care Administrator)

As with his claims in Counts 1-3, Plaintiff alleges that Defendant Magnus "almost immediately" retaliated against him because he filed grievances starting approximately two years ago and named her in his 2013 lawsuit (Doc. 1, pp. 20-21).  But the only specific example of retaliation is her July 3, 2013, interference with Plaintiff's medical treatment for his ear pain, followed by her alleged interference with the proper investigation of his grievance over her conduct on July 3.  Count 10 for deliberate indifference to medical needs is based on the same facts as recited in this claim, and shall be discussed further below.

For the reasons explained in Counts 2 and 3 above, Plaintiff fails to state a retaliation claim here against Defendant Magnus.  **Count 4** shall accordingly be dismissed with prejudice.

**Count 5 – Retaliation by Defendant Banal**

Plaintiff claims that Defendant Banal, in retaliation for the same prior grievance activity and previous lawsuit, "authorized and approved" false disciplinary charges and punishments against Plaintiff on January 18, 2014, which resulted in Plaintiff's transfer out of the work camp and expulsion from his educational programs (Doc. 1-1, p. 1).  It is not clear from the complaint what exact conduct Defendant Banal engaged in regarding this incident, as Plaintiff does not mention him at all in his earlier factual narrative (Doc. 1, pp. 14-16).  The only other information Plaintiff includes about him is that he is a supervisor/Major (Doc. 1, p. 3).

Plaintiffs are required to associate specific defendants with specific allegations, so that defendants are put on notice of the claims brought against them and so they can properly answer the complaint.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); FED. R. CIV. P. 8(a)(2).  Where, as here, the only support for a claim is a conclusory statement without any description of the alleged unconstitutional conduct, a defendant cannot be said to be adequately put on notice of the claims directed against him.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

If Defendant Banal's role was to give supervisory approval to the allegedly false disciplinary action initiated and recommended by others, this would not constitute sufficient personal involvement for liability to attach to him.  Further, as noted in Counts 3 and 4 above, it is not plausible to believe that Defendant Banal targeted Plaintiff in January 2014 in retaliation for grievances filed two years earlier that did not involve him, or on account of a 2013 lawsuit in which Defendant Banal was not named.  Because of the paucity of facts supporting this claim, **Count 5** shall be dismissed at this time without prejudice.

**Count 6 – Retaliation by Defendants Teverbaugh and Ritchey**

Plaintiff again titles this count as a retaliation claim.  As with the previous five counts, he claims that the alleged retaliatory acts were triggered by his prior grievances and the 2013 lawsuit.  Defendant Teverbaugh was in fact named as a defendant in that earlier case, but Plaintiff's claims against him were dismissed.  Therefore, the action did not proceed against him and he was not served with process.

In Plaintiff's narrative relating to this count, he states that Defendants Teverbaugh and Ritchey violated his due process rights in two disciplinary hearings.  On September 27, 2013, Plaintiff was not allowed to present witnesses in his defense or to postpone the hearing (Doc. 1-1, p. 2).  He says he was punished, but he gives no further information (Doc. 1, p. 14).  In the January 27, 2014, hearing, which resulted in Plaintiff's expulsion from the work camp and education program, Defendants Teverbaugh and Ritchey denied him any hearing at all, yet found him guilty of the charges.  These are the identical facts upon which Plaintiff bases his claims of due process violations in Count 19 and part of his state law claims in Count 20.

> [N]ot every claim of retaliation by a disciplined prisoner, who either has had contact with, or has filed a lawsuit against prison officials, will state a cause of action for retaliatory treatment.  Rather, the prisoner must allege a chronology of events from which retaliation may plausibly be inferred.  *Murphy v. Lane*, 833 F.2d 106, 108-09 (7th Cir. 1987) (holding that the plaintiff's complaint "set forth a chronology of events from which retaliatory animus on the part of defendants could arguably be inferred" sufficient to overcome a motion to dismiss).  *See also Benson v. Cady*, 761 F.2d 335, 342 (7th Cir. 1985) (noting that "alleging merely the ultimate fact of retaliation is insufficient").  Barring such a chronology, dismissal may be appropriate in cases alleging retaliatory discipline.

*Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988).

Here, Plaintiff's chronology posits that these defendants improperly handled his disciplinary charges and imposed punishment in September 2013 and January 2014, in retaliation for Plaintiff's unrelated grievances against other prison staff and for including meritless claims

against Defendant Teverbaugh in the July 2013 lawsuit.  This connection strikes the Court as being tenuous at best.  An inference of retaliation is only marginally plausible based on Plaintiff's recitation of the facts.  Nonetheless, out of an abundance of caution, Plaintiff shall be allowed to proceed with the retaliation claims in **Count 6** at this time.

## Count 7 – Retaliation by Defendant Gephart

Here, Plaintiff alleges that on February 10-12, 2014, Defendant Gephart searched Plaintiff's property, pulled him out of line, and took property from him in retaliation for Plaintiff's grievance activity and July 2013 lawsuit which was proceeding against Defendant Gephart.  Defendant Gephart verbally harassed Plaintiff and made derogatory comments. Finally, he ordered another officer to take Plaintiff's identification card, which was later returned to Plaintiff with his photograph scratched off so that Plaintiff had to pay for a replacement.

While verbal harassment and insulting comments fall short of adverse "actions" that would support a claim for unconstitutional retaliation, the taking and destruction of property and interference with Plaintiff's line movement went beyond mere words.  Following Plaintiff's earlier exercise of his First Amendment rights to pursue complaints against Defendant Gephart, these actions suggest an improper retaliatory motive.  Accordingly, Plaintiff may proceed with the new retaliation claims against Defendant Gephart in **Count 7**.

However, Counts 6 and 7 cannot proceed together in the same action, because they involve distinct incidents and different defendants.  Count 7 shall be severed into a separate action as ordered below.  *See George v. Smith*, 507 F.3d 605 (7th Cir. 2007).

## Count 8 – Retaliation by Defendant Pruett

This retaliation claim, like those in Counts 2 and 3 above, must fail.  Defendant Major Pruett is described as a supervisor who denied and refused to investigate Plaintiff's grievance

filed on March 24, 2014, and failed to take the corrective action sought in the grievance (Doc. 1-1, p. 3).   For the reasons explained in Counts 2 and 3, **Count 8** also shall be dismissed with prejudice.

### Count 9 – Common Law and State Law Retaliation Claims

In this count, Plaintiff repeats the same allegations he brought under Counts 1-8, but seeks to add retaliation claims under common law, state law, and the Illinois Constitution. Because Counts 1-5 and 8 shall be dismissed, the Court shall consider only the allegations contained in Counts 6 and 7 against Defendants Teverbaugh, Ritchey, and Gephart, in reference to these state law claims.

None of the specific state statutes or constitutional provisions Plaintiff cites applies to his situation or gives rise to any actionable retaliation claim based on the facts of this case.   Sections 17, 18, and 19 of the Illinois Constitution, article I, address discrimination in employment and the sale or rental of property; equal protection rights on account of sex; and discrimination against handicapped persons, respectively.   775 Illinois Compiled Statutes 5/6-101 is a section of the Illinois Human Rights Act, relating only to complaints of discrimination in education and employment.   730 Illinois Compiled Statutes 5/3-8-8(a) and (b) are sections of the statute governing grievance procedures within Illinois prisons, and does not provide for any private right of action.   Plaintiff's claims under these provisions therefore fail.

As to any retaliation claim based upon Illinois common law, Plaintiff has not cited any additional authority or articulated any claim distinct from the federal constitutional claims discussed in Counts 1-8 above.   The Court cannot discern any reason to add such a vaguely-pled state law claim to the two retaliation claims (Counts 6 & 7) that shall receive further consideration.   Therefore, **Count 9** shall be dismissed without prejudice.

**Count 10 – Deliberate Indifference to Medical Needs by Defendants Kim and Magnus**

This claim is based upon Plaintiff's July 3, 3013, visit to the Health Care Unit, when Defendants Kim and Magnus told Plaintiff that before he could receive treatment for his ear pain, he must sign a money voucher for the $5.00 co-payment.  Plaintiff refused to sign, insisting that he should be exempt from this charge.

Plaintiff's recitation of the facts shows that he had a stand-off with these defendants, which was created by his own obstinate insistence that he should not be required to pay for his care.   Consistent with the prison's policies for inmates who request medical treatment, Defendants Kim and Magnus simply required Plaintiff to sign the voucher consenting to the co-payment charge before care would be provided.  Plaintiff refused to do so.

"The Eighth Amendment does not compel prison administrators to provide cost-free medical services to inmates who are able to contribute to the cost of their care." *Poole v. Isaacs,* 703 F.3d 1024, 1026 (7th Cir. 2012).  Further, an inmate who "opt[s] to refuse treatment rather than part with his money" cannot prevail on an Eighth Amendment claim because "[e]ven though he was in pain until he received treatment, the delay in receiving care was of his own making." *Id.* at 1027.

It is not clear from the complaint whether Plaintiff ultimately received any care or whether his symptoms resolved on their own.  Regardless, the delay or "denial" of care was the result of his own choice.  He had an alternative – to sign the voucher and then pursue a grievance over the assessment of any charge.  Instead, he chose to forego treatment rather than incur the obligation to pay the fee.

Plaintiff is well aware that he cannot maintain a constitutional claim based on the assessment of a medical co-payment, because he brought such a claim in Case No. 13-cv-659

(designated in that case as Count 4), based on an earlier incident.  That civil rights claim was dismissed from the action under § 1915A.  The July 3, 2013, incident upon which Plaintiff bases his new claims in Counts 10-12 appears to have been contrived by him in order to bring another claim based on his disagreement with the medical co-payment policy (or its application), this time cloaked in allegations of deliberate indifference to his medical needs.  Contrived or not, Plaintiff's claim that Defendants Kim and Magnus were deliberately indifferent to his condition when they refused to treat him until he signed the co-payment form is unsustainable.  **Count 10** shall be dismissed with prejudice.

### Count 11 – Deliberate Indifference to Medical Needs by Defendant Warden Dozier

This claim shall also be dismissed with prejudice, for the reasons explained in Count 10.

### Count 12 – Deliberate Indifference to Medical Needs by Defendant Cameron

Again, this claim shall be dismissed with prejudice for the reasons explained in Count 10.

### Count 13 – Common Law and State Law Claims for Cruel & Unusual Punishment, Deliberate Indifference, Medical Malpractice, and Negligence

This count is entirely based upon the allegations underlying Counts 10-12 above, which shall be dismissed.  Therefore, the Court shall not consider these state-law-based claims in this action.  **Count 13** shall be dismissed without prejudice so that Plaintiff may pursue these claims in state court, should he so desire.  Nothing herein shall be construed as an opinion on the merits of the potential state law claims.

### Count 14 – Eighth and Fourteenth Amendment Claims Against Defendant Godinez

Defendant Godinez is the Director of the IDOC.  There are no allegations showing that he was directly or personally involved in any of the incidents at Vandalia mentioned in this lawsuit.  Instead, Plaintiff seeks to hold Defendant Godinez liable for the alleged retaliation, deliberate indifference to medical needs, and other claimed violations based on his failure to respond to

Plaintiff's grievances over these matters.  Additionally, Plaintiff asserts that Defendant Godinez should be liable as the ultimate policy-maker and supervisor over the prison system.  Neither of these theories of liability is tenable.   And a similar claim against Defendant Godinez was dismissed with prejudice in Case No. 13-cv-659-JPG-PMF (Count 7 in that action).

As noted in Count 2, a defendant's action or inaction in handling a prisoner's grievances will not support an independent constitutional claim.  "[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause."  *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996).  A prison official must have been personally involved in a constitutional violation in order for liability to attach.  Therefore, the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim."  *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011).  *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007).  Similarly, Defendant Godinez's position of authority as the IDOC Director cannot be the basis for liability in a civil rights action (see Count 3).  The doctrine of *respondeat superior* does not apply in suits brought under § 1983.  *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001).  For these reasons, **Count 14** shall be dismissed with prejudice.

## Count 15 – Deliberate Indifference to Medical Needs by Defendant Wexford Health Sources

Here, Plaintiff asserts that Defendant Wexford should be held liable for the acts and omissions of Defendant Kim and Magnus, who are employees of Wexford.  The basis for this claim is the July 3 incident where Plaintiff refused to sign the co-pay voucher and thus received no medical care (Counts 10-12).  Because the claims against Defendants Kim and Magnus have no merit, this claim against their employer must also fail.  Count 15 shall be dismissed with prejudice.

**Count 16 – Fourteenth Amendment Equal Protection/Discrimination by Defendant Wexford**

This claim is again based in part on the medical co-payment dispute.  Plaintiff mentions the incident on July 3, 2013, and claims that he was improperly required to pay a fee when he was indigent on January 31, 2012, and September 16, 2014.  His theory that he and other indigent prisoners were discriminated against based on their lack of financial resources is unavailing.  Any claim that Plaintiff was improperly charged a medical co-payment belongs in state court, as explained in the threshold order in Case No. 13-cv-659-JPG-PMF (see Count 4 in that case).

Plaintiff also includes a claim that in April 2014, at Taylorville, he was refused treatment for an eye problem because he could not pay (Doc 1-1, p. 13).  Finally, he claims that on August 6, 2014, he was overcharged for a medical procedure because he is Black.  Without commenting on the merits of these claims, they do not belong in this action or in this Court.  Taylorville is located within the jurisdiction of the District Court for the Central District of Illinois.  Plaintiff was transferred there in March 2014 (Doc. 46 in Case No. 13-cv-659-JPG-PMF).

The civil rights claims in **Count 16** related to Vandalia are dismissed with prejudice.  The claims involving incidents at Taylorville are dismissed without prejudice.

**Count 17 – Fourteenth Amendment Equal Protection/Discrimination and Conspiracy by Defendants Kim, Magnus, and Dozier**

Once again, Plaintiff attempts to elevate the co-payment issue into a constitutional claim, theorizing that as an indigent inmate, he was treated differently from inmates who were able to pay the fee.  This claim must fail, for the reasons stated above – and fundamentally, because Plaintiff could have received the care he sought if he had merely signed the co-payment voucher. **Count 17** shall be dismissed with prejudice.

**Count 18 – Equal Protection/Discrimination by Defendant Godinez**

As in Count 14, this claim is based upon Defendant Godinez's failure to remedy problems brought to his attention through Plaintiff's grievances and includes a *respondeat superior* claim. Like Count 14, **Count 18** shall be dismissed with prejudice.

**Count 19 – Fourteenth Amendment Due Process Violation and Conspiracy by Defendants Teverbaugh and Ritchey**

This claim involves the January 27, 2014, disciplinary charges that led to Plaintiff's expulsion from the work camp and educational program, as well as a demotion in grade and classification (Doc. 1-1, p. 17). Plaintiff was not given the required 24-hour advance written notice of the charges against him. When he requested a continuance of his disciplinary hearing, Defendants Teverbaugh and Ritchey told Plaintiff he would be called back and would have an opportunity to present a defense. However, they concluded the proceedings and found Plaintiff guilty without giving him any hearing whatsoever. Plaintiff never describes the nature of the charges, other than to say they arose from a search of his property while he was housed at the work camp.

The filing of even a false disciplinary charge does not state a Fourteenth Amendment claim so long as the accused inmate is given a subsequent hearing on the charge, in which the prisoner is afforded the procedural protections outlined in *Wolff v. McDonnell*, 418 U.S. 539 (1974) (advance written notice of the charge, right to appear before the hearing panel, the right to call witnesses if prison security allows, and a written statement of the reasons for the discipline imposed). Prisoners have a right "to be free from arbitrary actions of prison officials," *Hanrahan v. Lane*, 747 F.2d 1137, 1141 (7th Cir. 1984), but the procedural protections outlined in *Wolff* have been held to be sufficient to safeguard a prisoner against arbitrary disciplinary actions.

Plaintiff, of course, had none of these procedural protections, because he was disciplined without being allowed to appear at a hearing or present a defense.  For the due process clause to be applicable in this instance, however, there must be a protected liberty or property interest that is being infringed upon.  *Meachum v. Fano*, 427 U.S. 215, 223-24 (1976).  Not every action that carries with it negative consequences creates a liberty interest for inmates.  *Moody v. Daggett*, 429 U.S. 78, 86-88 (1976).

It is well settled that there is no property or liberty interest in attending educational, vocational, or rehabilitative courses while in prison, and institutions are not constitutionally required to provide these programs to inmates.  *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000) (prisoner had no Fourteenth Amendment due process claim for being transferred to a prison where he could no longer enroll in programs that might earn him earlier release); *Higgason v. Farley*, 83 F.3d 807, 809 (7th Cir. 1996); *Garza v. Miller*, 688 F.2d 480, 486 (7th Cir. 1982), *cert. denied* 459 U.S. 1150 (1983).  Under this authority, Plaintiff cannot maintain a claim for his removal from the educational programs after he was found guilty of the disciplinary charge.  The same is true for his demotion in grade and classification.  *See, e.g.*, *Thomas v. Ramos*, 130 F.3d 754, 762 n.8 (7th Cir. 1997) (and cases cited therein) (no protected liberty interest in demotion to C-grade status).

This leaves the matter of the work camp placement itself.  The Seventh Circuit has stated, relying on *Montanye v. Haymes*, 427 U.S. 236 (1976), that inmates do not possess a liberty or property interest in their prison classifications.  *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992).  This means that prison administrators may move inmates to any prison within the system, or to any housing area within a particular institution.  "Prisoners have no constitutionally

protected liberty interest in remaining in any particular wing of a prison." *Williams v. Faulkner*, 837 F.2d 304, 309 (7th Cir. 1988) (citing *Hanvey v. Pinto*, 441 F.2d 1154, 1155 (3d Cir. 1971)).

Clearly, Plaintiff found his work camp placement at Vandalia to be more desirable than the conditions of confinement found in the general population at that institution. But the benefits and privileges associated with a work camp environment do not elevate that placement to a property or liberty interest. The Seventh Circuit has held that prison officials have discretion to approve or deny an inmate's application for work camp or work release placement, and the creation of these programs under state law does not generate a protected liberty or property interest. *DeTomaso*, 970 F.2d at 212; *Joihner v. McEvers*, 898 F.2d 569, 570-73 (7th Cir. 1990) (denial of inmate's application for work camp slot did not implicate due process concerns). Because an inmate does not have a property or liberty interest in obtaining a work camp placement, no process is required when such an assignment is denied. The same is true where a work camp or work release assignment is revoked – no hearing or other process is due, because the prisoner has no protected liberty or property interest in remaining in such a program, desirable as it may be. *See Roy v. Domiguez*, No. 06-CV-300-PS, 2006 WL 2604606, at *1-2 (N.D. Ind. Sept. 8, 2006) (no due process violation when plaintiff was removed from work release program without written notice or a hearing).

Under this authority, Plaintiff has no cognizable due process claim even for an arbitrary termination of his placement in the work camp. The only constitutional issue which might arise from these events would be where the assignment was changed for an impermissible reason, such as in retaliation for Plaintiff's exercise of his First Amendment rights. *See Wallace v. Robinson*, 940 F.2d 243, 246-49 (7th Cir. 1991) (discussing *Montanye v. Haymes*, 427 U.S. 236

(1976), in reference to prisoner's transfer to a less-desirable job assignment).  That question shall be addressed in Count 6.  The due process claim in **Count 19** shall be dismissed with prejudice.

## Count 20 – Common Law, State Law, and Negligence Claims against Defendants Teverbaugh, Ritchey, and Godinez

Plaintiff rolls a number of claims into this count.  Incorporating the allegations underlying Counts 18 and 19, he seeks to bring a negligence claim against Defendants Teverbaugh, Ritchey, and Godinez as well as "other prison officials" for failing to protect him, denying him due process, failing to train and supervise subordinates and prevent their misconduct, as well as for medical malpractice.  He also references the allegations in Counts 1-17 (Doc. 1-1, pp. 17-18).  He asserts violations of the Illinois Constitution without invoking any particular provision of that document.  The only specific citations to the Illinois statutes he claims have been violated are to 730 Illinois Compiled Statutes 5/3-8-7(e)(3) and 730 Illinois Compiled Statutes 5/3-6-2(f).

Section 5/3-8-7(e)(3) provides inmates the right to have a hearing on any disciplinary charge that may result in punitive segregation or the loss of good conduct credits.  The statute does not give rise to a private right of action for an alleged violation.  Moreover, nothing in the complaint indicates that this provision even applies to Plaintiff, because he never states what disciplinary infractions he was charged with, nor does he explain whether the charges were serious enough to have potentially resulted in segregation or a loss of good time.  Section 5/3-6-2(f) contains the rules on exemptions from the $5.00 co-payment charge for inmates seeking medical care.  Plaintiff may be able to seek redress in the Illinois Court of Claims if this provision was violated.  The matter will not be further addressed herein, however, for the reasons explained in the discussion of dismissed Counts 10-13.

Again, the only claims listed in Counts 1-19 that have survived threshold review are

Counts 6 and 7, both of which involve retaliation.  In the discussion of Plaintiff's purported state law and common law claims under Count 9, the Court determined that Plaintiff had not presented any reason for the Court to assert jurisdiction over any state law claims in relation to Counts 6 and 7.  The matters pled in Count 20 that touch on those retaliation claims are likewise unconvincing.  Additionally, because Counts 1-5 and 8-19 shall be dismissed, no state law claims connected to those dismissed counts shall be allowed to proceed in this action.

In the second section of Count 20 (¶ 126), Plaintiff asserts that Defendants Godinez and Dozier refused to transfer him to a different prison, despite numerous requests from Plaintiff between November 2012 and April 2014.  He argues that because of his many grievances over the unconstitutional and retaliatory actions by their subordinate employees, Defendants Godinez and Dozier had a "duty to intervene" to remove him from the "harmful and dangerous" situation he faced in Vandalia (Doc. 1-1, p. 18).  As discussed below in Counts 3, 14, and 18, an administrator's failure to respond to a prisoner's grievances is not actionable.  Further, under the facts as pled in the complaint, Plaintiff has no viable federal constitutional claim arising from the denial of his transfer requests.  *See Montanye v. Haymes*, 427 U.S. 236 (1976); *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992).  In the absence of such a federal claim, the Court will not address any potential state law claim that might arise from these facts.

**Count 20** shall be dismissed without prejudice.

## Count 21 – Intentional Infliction of Emotional Distress/Mental Anguish Claims

Finally, Plaintiff seeks to assert these state tort claims against all the named defendants (Doc. 1-1, pp. 18-19).  In support, he asserts that because of the continuing harassment, punishment, retaliation, and threats to which the defendants subjected him, his physical, mental, and emotional health deteriorated to the extent that a Vandalia psychologist recommended he be

transferred for health reasons.  When he arrived at Taylorville, he was placed on medical watch because of his high blood pressure, which he attributes to the defendants' conduct.

Under Illinois law, the tort of intentional infliction of emotional distress covers only acts that are truly "outrageous," that is, an "'unwarranted intrusion . . . calculated to cause severe emotional distress to a person of ordinary sensibilities.'"  *Knierim v. Izzo*, 174 N.E.2d 157, 164 (Ill. 1961) (quoting *Slocum v. Food Fair Stores of Fla.*, 100 So. 2d 396 (Fla.1958)).  *See Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001).  The tort has three components: (1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress or know that there is at least a high probability that his conduct will cause severe emotional distress; and (3) the conduct must in fact cause severe emotional distress.  *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988).  To be actionable, a defendant's conduct "must go beyond all bounds of decency and be considered intolerable in a civilized community."  *Honaker*, 256 F.3d at 490 (citing *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211 (Ill. 1992); *Campbell v. A.C. Equip. Servs. Corp., Inc.*, 610 N.E.2d 745, 749 (Ill. App. 1993).  Whether conduct is extreme and outrageous is judged on an objective standard, based on the facts of the particular case.  *Honaker*, 256 F.3d at 490.

Again, the only surviving counts in this action are the retaliation claims in Counts 6 and 7.  Where a district court has original jurisdiction over a civil action such as a § 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims.  *Wisconsin v. Ho-Chunk Nation,* 512 F.3d 921, 936 (7th Cir. 2008).

The Court has supplemental jurisdiction over the emotional distress claims in Count 21 as they relate to Counts 6 and 7.  However, the state tort claims in Count 21 do not survive scrutiny

under 28 U.S.C. § 1915A.  While the Court cannot condone the acts of retaliation described in Counts 6 and 7 (if, indeed, they were retaliatory), the actions attributed to Defendants Teverbaugh, Ritchey, and Gephart do not rise to the level of extremity and outrageousness that would support a tort claim for intentional infliction of emotional distress.  These claims shall therefore be dismissed for failure to state a claim upon which relief may be granted.  The dismissal of the claims against Defendants Teverbaugh, Ritchey, and Gephart, as well as against the other defendants in Count 21, shall be without prejudice.

**<u>Pending Motions</u>**

Plaintiff's motion for recruitment of counsel (Doc. 3) shall be referred to United States Magistrate Judge Wilkerson for further consideration.

The motion for service of process at government expense (Doc. 5) shall be **GRANTED in part and DENIED in part.**  Service shall be ordered below on those defendants who remain in this action.  No service shall be made on the dismissed defendants.  Service on the defendant in the severed case shall not be ordered unless Plaintiff elects to proceed with that matter.

**<u>Disposition</u>**

**COUNTS 1, 5, 9, 13, 20, and 21** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.  **COUNTS 2, 3, 4, 8, 10, 11, 12, 14, 15, 17, 18, and 19** are **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted.  **COUNT 16** is also **DISMISSED** from the action; the portion of this count relating to events at Vandalia is dismissed with prejudice, and the portion of Count 16 relating to events at Taylorville is dismissed without prejudice.

Defendants **WEXFORD HEALTH SOURCE, MAGNUS, KIM, GODINEZ, DOZIER, CAMERON, BANAL, PRUETT,** and **HARTER** are **DISMISSED** from this action

without prejudice.

**IT IS HEREBY ORDERED** that Plaintiff's retaliation claims against Defendant **GEPHART** (**COUNT 7**), which are unrelated to the retaliation claims in Count 6 against Defendants Teverbaugh and Ritchey, are **SEVERED** into a new case.

The new case shall be assigned to the undersigned District Judge for further proceedings. In the new case, the Clerk is **DIRECTED** to file the following documents:

      (1)      This Memorandum and Order;
      (2)      The Original Complaint (Docs. 1 and 1-1); and
      (3)      Plaintiff's motion to proceed *in forma pauperis* (Doc. 2).

Plaintiff is **ADVISED** that if, for any reason, he does not wish to proceed with the newly-opened case containing the retaliation claims against Defendant Gephart, he must notify the Court in writing within 35 days (on or before **January 15, 2015**).  Unless Plaintiff notifies the Court that he does not wish to pursue the newly opened action, he **will be responsible for an additional $350.00 filing fee** in the new case.[5]  Service shall not be ordered on Defendant Gephart until after the deadline for Plaintiff's response.

**IT IS FURTHER ORDERED** that the *only claim remaining in this action is COUNT 6 against Defendants Teverbaugh and Ritchey*, for retaliation.  This case shall now be captioned as:  **JOHN D. BROWN, Plaintiff, vs. SHAWN D. RITCHEY and HENRY P. TEVERBAUGH, Defendants.**

**IT IS FURTHER ORDERED** that Defendant **GEPHART** is **TERMINATED** from *this* action with prejudice.

As to **COUNT 6**, which remains in the instant case, the Clerk of Court shall prepare for Defendants **RITCHEY** and **TEVERBAUGH**:  (1) Form 5 (Notice of a Lawsuit and Request to

---

[5] The fee for the severed case shall be $350.00 so long as Plaintiff is granted leave to proceed *in forma pauperis* ("IFP") in that action.  Litigants who are not granted IFP status are assessed an additional $50.00 administrative fee, for a total filing fee of $400.00.

Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each defendant's place of employment as identified by Plaintiff.  If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, the defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on defendants or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings, which shall include a

determination on the pending motion for recruitment of counsel (Doc. 2).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  December 11, 2014**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**